FILED '08 SEP 16 14:54 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEVEN L. MCNAMARA, )
)
    Plaintiff, )  Civ. No. 07-6079-TC
)
    vs. )  FINDINGS OF FACT AND
)  CONCLUSIONS OF LAW
UNIVERSAL COMMERCIAL SERVICES, )
INC., an Arizona Corporation, )
and SABINE SHARP, an individual,)
)
)
    Defendants. )
)
_____)

Coffin, Magistrate Judge:

    Plaintiff brought this copyright infringement action against defendants after copyrighted material that he authored was posted on GlendaleDesigns.com, a website controlled by defendant Universal Commercial Services, Inc. Defendants assert their infringement was innocent or, in the alternative, that it was fair use, and that plaintiff is estopped from asserting copyright infringement because he failed to use technology to protect the content. This court has jurisdiction pursuant to 28 U.S.C. § 1338(a) ("The district court shall have original jurisdiction of any civil action arising under any Act of Congress relating to .

1 Findings of Fact and Conclusions of Law

. . copyrights[.]") and 28 U.S.C. § 1331 (federal question).

On March 20, 2008, summary judgment was granted in plaintiff's favor against defendants' affirmative defense of misuse but denied on the issue of defendants' infringement liability (#25). The matter was tried to the court on August 26, 2008.

The parties stipulated to the following facts as set out in the pretrial order and as agreed to at the pretrial conference:

1. Plaintiff Steven McNamara, a resident of Oregon, is an author and a sole proprietor of an internet business known as AdCracker.com, a "tool to create world-class advertising and marketing ideas."

2. Plaintiff has a valid copyright (registration # TX 6-425-811) in the written material at issue, an original work entitled "How to write a creative brief" (the "subject article"). From 1999-2005, AdCracker.com published the article. The article was also available as part of a package for sale on plaintiff's website.

3. Defendant Universal Commercial Services, Inc., d.b.a. Glendale Designs, is a corporation organized under the laws of Arizona with its principal place of business in Glendale, Arizona.

4. Defendant Sabine Sharp is an individual and a corporate officer of Universal Commercial Services and a resident of Glendale, Arizona.

5. Universal Commercial Services operates a website at http://www.glendaledesigns.com. The business provides website

2 Findings of Fact and Conclusions of Law

design and search engine optimization services.

6. Defendant Sharp posted the subject article on glendaledesigns.com sometime in the fall of 2006.

7. In December 2006, plaintiff's attorney sent a letter to defendant Sharp in which plaintiff demanded removal of the subject article from the glendaledesigns.com website. Plaintiff's letter demanded a payment of $300,000 by January 15, 2007. The letter threatened that if defendants did not "meet the terms set forth above, we will seek recovery of additional fees and damages." The letter stated that defendants "should also be aware that copyright infringement may constitute one or more Criminal Offenses," and that "we believe this case meets the standard for criminal culpability," and "will pursue criminal charges against all appropriate persons in your company if this case is not settled."

8. After receiving the letter, defendant Sharp immediately removed the subject article from her website.

9. Plaintiff and defendant operate different types of businesses and are not in direct competition.

## Conclusions of Law

Based on the foregoing facts, I have come to the following conclusions:

1. Plaintiff has made out a _prima facie_ case of copyright infringement. First, plaintiff owns the rights to the subject article; second, defendants violated at least one of his exclusive rights to the material. See A & M Records, Inc. v. Napster, 239 F.3d 1004, 1013 (9th Cir. 2001) ("Plaintiffs must

3 Findings of Fact and Conclusions of Law

satisfy two requirements to present a prima facie case of direct infringement: (1) they must show ownership of the allegedly infringed material and (2) they must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106.") Defendants published the subject article on their website without permission from or attribution to plaintiff. In addition, defendants reproduced approximately 75% of the subject article verbatim, violating plaintiff's rights to reproduce the copyrighted work, 17 U.S.C. § 106 (1), to prepare derivative works, 17 U.S.C. § 106 (2), and to display the copyrighted work publicly, 17 U.S.C. § 106 (5).

2. Defendants' use of the subject article was not fair use. Under the fair use defense, copyright law recognizes limitations on copyrights for the use of works for certain purposes, including "criticism, comment, news reporting, teaching . . . scholarship, [and] research." 17 U.S.C. § 107. The burden of proving fair use lies with the defendant. Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 590 (1994).

Courts consider four factors to determine whether a use constitutes fair use: (1) The purpose and character of the use, including whether the use is commercial or for nonprofit use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion taken; and (4) the effect of the use upon the potential market. 17 U.S.C. § 107.

The first factor looks at whether defendants' work "merely supersedes the objects of the original creation," or "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it

4 Findings of Fact and Conclusions of Law

asks, in other words, whether and to what extent the new work is 'transformative.'" Campbell, 510 U.S. at 579 (internal citation omitted). The purpose of defendants' use, to attract customers to their website, was commercial. Defendants further used search engine optimization techniques to make the article search-friendly. The subject article was used to generate business. The use of the subject article was not transformative, but an exact copy with minor edits.

Further, the nature of the work was factual and instructive; while it also constituted a creative work, the second factor does not weigh in favor of fair use. Moreover, the amount of the subject article taken for use on defendants' website was substantial. Plaintiff's Exhibit 5 highlights the portions of his AdCracker article that were copied verbatim by defendants in the GlendaleDesigns ad--approximately 75% of the text of defendants' article is identical in wording to the copyrighted material.

Finally, the effect of the use on the potential market is the most important element of the fair use doctrine. Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 566 (1985). When the use is a commercial one, a likelihood of future harm to the potential market is presumed, unless the work is transformative of the original. Campbell, 510 U.S. at 590. Plaintiff was not in direct market competition with defendants, therefore the effect on the potential market is de minimis. However, defendant did not pay for the use of plaintiff's copyrighted material, and both parties were using the subject article in an advertising capacity to draw business to their

5 Findings of Fact and Conclusions of Law

websites. There was a potential for customer confusion.

In sum, the factors discussed above weigh against defendants' claim of fair use, and this court concludes that it was not fair use.

3. Plaintiff is not estopped from asserting the copyright. A plaintiff is estopped "if he has aided the Defendant is infringing or otherwise induced to infringe." Quinn v. Detroit, 23 F. Supp. 2d 741, 753 (E.D. Mich. 1998). Defendant failed to prove that plaintiff knew of the infringing conduct, that plaintiff intended that she rely upon his conduct or acted so that she had a right to believe that it was intended, that she was ignorant of the true facts, and that she relied upon plaintiff's conduct to her detriment. See Carson v. Dynegy, Inc., 344 F.3d 446, 453 (5th Cir. 2003). In fact, when plaintiff learned of the infringement, he took immediate action to request that defendants remove the material from their website. Further, defendant has failed to prove that plaintiff had means available to protect the material further. Finally, defendant admitted that she knew that she was not the author of the subject article. Plaintiff is therefore not estopped from asserting his copyright.

4. Defendants' infringement was not innocent. An infringement is considered innocent when a defendant proves by a preponderance of the evidence that she was unaware that her actions constituted infringement, and she had no reason to believe that her acts constituted infringement. 17 U.S.C. § 504(c)(2). Even if defendant Sharp's testimony can be taken as true (that she received the subject article in an e-mail from an uncertain source and that the source did not contain a copyright

6 Findings of Fact and Conclusions of Law

notice), a simple word search on the internet would have revealed that the original source of the article was Adcracker.com. Both plaintiff's website and another website on which the article appeared (MarketingProfs.com) contained a clear attribution to plaintiff and a copyright notice. Defendant has significant experience in search engine optimization techniques, and an obvious word search for "creative brief" on the internet would have easily led her to plaintiff's website where she would have discovered the copyrighted subject article.

Moreover, defendant provided no documentary evidence of an e-mail from Namibia, which she believes contained the subject article without attribution. Defendant's testimony about a computer disc crash and the source of the article was unpersuasive. Defendant's infringement was not innocent.

5. I decline to exercise my discretion to increase damages for willful infringement. An infringement is willful where a defendant was actually aware that her actions constituted infringement or acted with reckless disregard for, or willful blindness to, the rights of the copyright owner, or should have known that her actions constituted infringement. Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 263 (2d Cir. 2005); 17 U.S.C. § 504(c)(2) (if the court finds that infringement was committed willfully, the court in its discretion may increase the award of statutory damages). Because, for the reasons discussed below, I decline to exercise my discretion to increase statutory damages due to willfulness, I do not address it further.

6. Plaintiff requests statutory damages. The Copyright Act

7 Findings of Fact and Conclusions of Law

provides for statutory damages as follows:

> (1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually,. . . in a sum of not less than $750 or more than $30,000 as the court considers just . . . .
>
> (2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000 . . . .

17 U.S.C. § 504(c)(1)-(2). For the "innocent infringer," the court has discretion to lower the statutory damages to not lower than $200 if the infringer sustains the burden of proving that she was not aware and had no reason to believe that her acts constituted an infringement of copyright. 17 U.S.C. § 504(c)(2). Courts have wide discretion in determining the amount of statutory damages within the allowable range. See <u>Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.</u>, 259 F.3d 1186, 1194 (9th Cir. 2001).

The court notes that, even if defendants' conduct can be considered willful, I decline to exercise my discretion to increase the award above the $750 to $30,000 range for the following reasons:

First, the subject article was not itself a product that plaintiff sold separately to his clients or customers. It can best be described as an introductory sampler of more complete and detailed pointers for writing a creative basic brief in the field

8 Findings of Fact and Conclusions of Law

of advertising that plaintiff offered for sale on a CD-ROM.[1] Defendants did not sell a competing product. Rather, Sharp and Universal are in the website design business. What defendant did, in essence, amounted to plagiarizing the bulk of plaintiff's ad promoting his product and tailoring it to fit her non-competing product. The analogy presents itself of a seller of hunting rifles who authors an article on his website describing in eloquent prose the essence of a "great hunt," with the ending being a pitch for a particular rifle touted for its accuracy and reliability. The article is duly copyrighted. Along comes a purveyor of binoculars, who posts the article virtually word for word on her website, but modifies the ending to promote not a competing rifle but a set of binoculars. There is infringement because the original author did not authorize the use, but there is similarly little potential for actual damages because the ad itself is not for sale and the products are not in competition.

Second, plaintiff's demand letter was highly inappropriate in threatening to refer a matter for criminal prosecution unless a demand for money was satisfied; such a tactic is itself arguably a violation of the law.[2] Thus, applying a deterrence factor in setting statutory damages cuts both ways under the circumstances

---

[1] The AdCracker CD-ROM featured four types of briefs for ad agencies: Basic Brief, Quick Brief, Creative Director's Brief, and Advanced Brief. The subject article was described as a chapter of the Basic Brief presentation, and this "chapter" was not sold as a separate item.

[2] 18 U.S.C. § 873 states: "Whoever, under a threat of informing, or as consideration for not informing, against any violation of any law of the United States, demands or receives any money or other valuable thing, shall be fined under this title or imprisoned not more than a year, or both."

9 Findings of Fact and Conclusions of Law

of this case. Suffice it to say that the court is not persuaded that defendants' infringing conduct, especially when counterbalanced by plaintiff's egregious demand, justifies statutory damages in the higher range of 17 U.S.C. § 504(c)(2).

## Conclusion

This is somewhat of an unusual case. Plaintiff copyrighted an ad that was tailored to his product: a CD-ROM that contained tips on how to write creative briefs in the advertising industry. Defendants lazily lifted the ad (even accepting Sharp's testimony at face value, the search tools to find plaintiff's website and thus his copyright notice were literally at her fingertips), and tailored it to fit their non-competing product. In doing so, however, defendants did not cause plaintiff any actual damages, nor did they present a reasonable potential for actual damages. Plaintiff, in turn, responded to defendants' copyright violation by inappropriately threatening criminal prosecution unless they paid him the exorbitant sum of $300,000.

In light of all the circumstances, I award statutory damages in the amount of $1,000.

Dated this 16th day of September, 2008.

_____
THOMAS M. COFFIN
United States Magistrate Judge

10 Findings of Fact and Conclusions of Law